# In the United States Court of Federal Claims
No. 21-1910

(Filed under seal: February 23, 2022)
(Reissued: March 4, 2022)

| | | |
|---|---|---|
| **SAVANTAGE FINANCIAL SERVICES, INC.,** | ) ) ) ) | Post-award bid protest; "late-is-late" rule; price reasonableness; integration of software; best value |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **UNITED STATES,** | ) ) | |
| Defendant, | ) ) | |
| **and** | ) ) | |
| **CGI FEDERAL, INC., and MYTHICS, INC.,** | ) ) ) | |
| Defendant-Intervenors. | ) | |

    W. Barron A. Avery, Baker & Hostetler LLP, Washington, D.C. for plaintiff.  With him on the briefs were Brian V. Johnson, Baker & Hostetler LLP, Washington, D.C., Jacqueline T. Menk, Baker & Hostetler, LLP, Atlanta, Georgia, and Stephen M. Ryan, Washington D.C.

    William J. Grimaldi, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant. With him on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K. Mickle, Assistant Director, and Stephen J. Smith, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice.  Of counsel were Charlene T. Storino, Assistant General Counsel for Procurement Operations, Christine Fontenelle, and Pavan Mehrotra, Attorney Advisors, Office of the General Counsel, General Law Division, Department of Homeland Security.

    Jeffery M. Chiow, Rogers Joseph O'Donnell, P.C., Washington, D.C. for defendant-intervenor, CGI Federal Inc.  With him on the briefs were Lucas T. Hanback and Stephen L. Bacon, Rogers Joseph O'Donnell, P.C., Washington, D.C.

    David S. Black, Holland & Knight LLP, Tysons, Virginia for defendant-intervenor, Mythics, Inc.  Of counsel were Gregory R. Hallmark and Amy L. Fuentes, Holland & Knight LLP, Tysons, Virginia, and Hillary J. Freund, Holland & Knight, LLP, Washington, D.C.

## **OPINION AND ORDER**[1]

In this post-award bid protest, plaintiff Savantage Financial Services, Inc. ("Savantage") challenges the Department of Homeland Security's ("DHS") awards under Request for Proposal No. 70RTAC20R00000001 ("the solicitation"), alleging DHS's procurement procedure for obtaining financial, procurement, and asset management systems violated federal regulations and the solicitation's requirements, resulting in improper awards and the exclusion of Savantage.[2] Savantage has filed a motion for judgment on the administrative record as well as for a permanent injunction. *See* Pl.'s Mot. for Judgment on the Administrative Record ("Pl.'s Mot."), ECF No. 45.[3] Defendant United States ("the government") and awardees, defendant-intervenors CGI Federal, Inc. ("CGI") and Mythics, Inc. ("Mythics"), have submitted cross-motions. *See* Def.'s Cross-Mot. for Judgment on the Administrative Record ("Def.'s Cross-Mot."), ECF No. 54; Def.-Int. CGI's Cross-Mot. for Judgment on the Administrative Record ("CGI's Cross-Mot."), ECF No. 58; Def.-Int. Mythics's Cross-Mot. for Judgment on the Administrative Record ("Mythics's Cross-Mot."), ECF No. 59. The case is fully briefed, *see* Pl.'s Resp. and Reply, ECF No. 65; Def.'s Reply, ECF No. 70; Def.-Int. CGI's Reply, ECF No. 73; Def.-Int. Mythics's Reply, ECF No. 74, and a hearing was held February 2, 2022. For the reasons stated in this opinion, the court DENIES Savantage's motion for judgment on the administrative record and GRANTS defendants' cross-motions. Savantage's motion for a permanent injunction is DENIED AS MOOT.

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal. The parties were requested to review the decision and provide proposed redactions of any confidential or proprietary information. The protestor requested redactions, but defendants opposed this request. The court consequently held a hearing regarding redactions on March 4, 2022, concluding that several were necessary to protect the competitive process or shield proprietary information but other proposed redactions were not. The opinion is thus reissued with redactions shown as "[***]."

[2] This is the eighth opinion emanating from this court and the Court of Appeals for the Federal Circuit adjudicating bid protests by Savantage challenging DHS's procurement of modern financial, procurement, and asset management systems: *Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300 (2008) ("*Savantage I*"); *Savantage Fin. Servs., Inc. v. United States*, 86 Fed. Cl. 700 (2009) ("*Savantage II*"), *aff'd*, *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282 (Fed. Cir. 2010) ("*Savantage III*"); *Savantage Fin. Servs., Inc. v. United States*, 118 Fed. Cl. 487 (2014) ("*Savantage IV*"); *Savantage Fin. Servs., Inc. v. United States*, 123 Fed. Cl. 7 (2015) ("*Savantage V*"), *aff'd*, *Savantage Fin. Servs., Inc. v. United States*, 668 Fed. App'x 366 (Fed. Cir. 2016) ("*Savantage VI*"); *Savantage Fin. Servs., Inc. v. United States*, 150 Fed. Cl. 307 (2020) ("*Savantage VII*").

[3] Savantage also filed a motion to supplement the administrative record with a transcript from a hearing held on September 18, 2020 in the related case styled *Savantage VII*, Case No. 19-1805. It argued that the transcript would "assist effective judicial review of certain arguments raised by [the government] and [d]efendant-[i]ntervenors." Pl.'s Mot. to Supplement at 2, ECF No. 66. The government opposes this motion. Def.'s Opp'n to Pl.'s Mot. to Supplement, ECF No. 68. The transcript is not necessary for effective judicial review. Thus, the motion is DENIED.

# BACKGROUND[4]

### A. *DHS's Management Software Modernization*

This bid protest involves DHS's effort to modernize its financial, procurement, and asset management systems, a process that has spanned the past fifteen years. Def.'s Cross-Mot. at 1.[5] When twenty-two federal agencies were combined in 2002 to form DHS, each component agency's pre-existing contracts for management software remained in place. *See Savantage VII*, 150 Fed. Cl. at 312. DHS components still use separate systems to address their financial, procurement, and asset management activities. *See* Def.'s Cross-Mot. at 1. As a result, multiple vendors provide software of various types to DHS and its components. *See Savantage VII*, 150 Fed. Cl. at 312. Savantage has been—and still is—one of those vendors. *Id.* at 312-13. In 2004, DHS first sought to consolidate the various systems in place and to modernize its financial, asset, and procurement management systems. *See id.* at 313. Since that time, Savantage has filed protests challenging DHS's procurement methods. *See supra* n.2. This protest is the latest to be filed in the chain.

### B. *The Solicitation*

On October 30, 2019, DHS issued the solicitation for Enterprise Financial Management Software. AR 24-5374 to 5376.[6] The solicitation sought to award an indefinite-delivery, indefinite-quantity multiple award contract "to provide [DHS] with commercially available off-the-shelf . . . integrated financial, procurement, and asset management systems application software licenses." AR 24-5390. The solicitation specified a minimum award amount of $2,500 for "only the base period of performance" with a cumulative ceiling value of $3,000,000,000.

---

[4] The recitations that follow constitute findings of fact by the court from the administrative record of the procurement filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[5] DHS has both components and directorates; both of which are denominated as "components." The components at issue are: "(1) [United States Immigration and Customs Enforcement] and its customers, [United States] Citizenship & Immigration Services (CIS), [the] Science & Technology Directorate (S&T), the Cybersecurity and Infrastructure Agency (CISA), [and] the Management Directorate (DMO); (2) the Trio, which are the [United States] Coast Guard (USCG), the Transportation Security Administration (TSA), and the Countering Weapons of Mass Destruction Office (CWMD); (3) the Federal Emergency Management Agency (FEMA); (4) the Federal Law Enforcement Training Center (FLETC); (5) the [United States] Customs and Border Protection (CBP); [and] (6) [the] [United States] Secret Service (USSS)." Def.'s Cross-Mot. at 4 n.2. This opinion will refer to them collectively as "DHS" unless otherwise specified.

[6] The administrative record filed with the court in accord with RCFC 52.1(a) is divided into tabs and is consecutively paginated. The record will be cited by tab and page, *e.g.*, "AR - ___-___."

3

AR 24-5390.  There would be a potential 20-year ordering period under the contract.  AR 24-5390.

An award was to be made to an offeror "whose proposal [was] determined to represent the best value, price and non-price factors considered."  AR 68-10028.  Best value was defined as "the expected outcome of an acquisition that in the [g]overnment's estimation provide[d] the greatest overall benefit in response to the requirement."  AR 68-10028.  The solicitation recognized that this approach "may result in an award to [a] higher evaluated priced [o]fferor" but also provided that DHS would not "make an award at a significantly higher overall cost to the [g]overnment to achieve only slightly superior technical capability."  AR 68-10028.

To make its determination, DHS would use four or five technical, non-price factors: (1) Experience, (2) Functional Capability, (3) License Terms & Conditions and Security Overview, (4) Past Performance, and (5) Site Visit and Product Demonstration, the last of which was an optional factor.  AR 68-10028 to 10029.  The solicitation specified that "[f]actors 1 and 2 [were] of equal importance and more important then factors 3, 4 and 5 . . ., which are in descending order of importance."  AR 68-10029.  The final factor was price.  AR 68-10029.  The solicitation was explicit that "[a]ll the technical factors when combined [were] significantly more important than price."  AR 68-10029.  Offerors were to receive a rating of low confidence, some confidence, or high confidence for each technical factor.  AR 68-10027.

As relevant to this protest, factor 1 required offerors to show that their software "ha[d] been implemented . . . in an agency similar to DHS . . . with at least 6,500 users."  AR 68-10021.  Factor 2 required an "integrated [commercial off-the-shelf] software solution" which satisfied the various functional requirements outlined in the solicitation.  AR 68-10022.  Integrated was defined as:

> [A] [c]onnection between two or more software modules, typically part of the same system.  Connectivity is transparent to end users and maintained as part of a software offering.  The system is considered tightly coupled.  There is no software development required to build these connections and they do not require operations and maintenance support under a sustainment contract.  Updates are provided by the [original equipment manufacturer] vendor.

AR 27-6412.  Factor 4 required "up to three (3) relevant past performance references . . . . Relevant [was] defined as work similar in size, scope and complexity (at least 6,500 users) to the work identified in the solicitation."  AR 68-10024.

Factor 6 was the price-related factor and required that the offerors provide their "commercial rate and the discounted rate being proposed for each software area being proposed." AR 68-10027.  The solicitation further explained that "[t]he [o]fferor's price w[ould] be evaluated to determine price reasonableness.  The offeror's proposed prices contained in all tabs . . . w[ould] be evaluated for price reasonableness."  AR 68-10029.  DHS's "Business Evaluation Team" first conducted the price reasonableness analyses by comparing offerors' proposed prices with the General Services Administration's ("GSA") price lists, which offerors were required to provide.  AR 88-12020 to 12022.  Offerors' initial and final pricing were then compared.  AR

88-12033 to 120334.  The Trade-Off Chair then received the Business Evaluation Team's analysis and confirmed the price reasonableness determinations.  *See* Def.'s Cross-Mot. at 14; AR 91-12209.

### C.  Savantage's Pre-Award Protest & Amendments to the Solicitation

Pertinent here, on November 25, 2019, Savantage filed a pre-award protest.  *Savantage VII*, 150 Fed. Cl. at 315.  The court granted the government's motion for a voluntary remand in January 2020, and DHS took corrective action by issuing amendments 3 and 4 to the solicitation.  *Id.* at 315-16.  Savantage filed an amended complaint on July 7, 2020.  *Id.* at 316.  The court thereafter denied Savantage's protest, granting the government's motion for judgment on the administrative record.  S*ee generally id.*

Following the court's decision in *Savantage VII*, DHS issued amendment 5 to the solicitation on October 28, 2020.  AR 57-9692.  Amendment 5 incorporated three updated FAR clauses and requested that offerors confirm that their proposals would remain valid through February 28, 2021.  AR 57-9692 to 9693; 59-9740.[7]  Offerors were instructed to complete and return the required representations in the updated FAR provisions by November 2, 2020 at 12:00 p.m. eastern time.  AR 57-9693; 59-9740.  Offerors could also amend their proposals at that time, if necessary, to comply with the FAR requirements.  AR 57-9693; 59-9740.  Two offerors, Carahsoft Technology Corporation ("Carahsoft") and Mythics, submitted their updated proposals shortly after the deadline.  AR 59-9740.  Mythics's proposal did not include a required form and did not confirm the validity date of its proposal.  AR 59-9740.  Neither offeror amended the substance of their proposal.  Def.'s Cross-Mot. at 20; AR 59-9741.  The contracting officer determined that amendment 5 was "administrative" and "non-material" and that allowing Carahsoft and Mythics to proceed did not place the other offerors at "any discernable competitive disadvantage."  AR 59-9741.  As such, they remained in the competition.

### D.  The Awards

DHS, on March 8, 2021, issued a competitive range determination, concluding that only CGI and Carahsoft met the solicitation requirements and had a reasonable chance of receiving an award.  *See* Def.'s Cross-Mot. at 11.  Mythics and Savantage both filed bid protests challenging that determination.  *See* AR 67-9914 to 9919.  DHS took corrective action and cancelled the competitive range, allowing all offerors to continue with the competition.  AR 67-9919.  DHS further engaged in two rounds of discussion with the offerors.  *See generally* AR Tabs 71-79 (first round of discussions and final revised proposals); Tabs 80-86 (second round of discussions and final revised proposals).

---

[7] The three updated FAR clauses were FAR § 52.204–24, Representation Regarding Certain Telecommunications and Video Surveillance Services or Equipment (October 2020); FAR § 52.204–25, Prohibition on Contracting for Certain Telecommunications and Video Surveillance Services or Equipment (Deviation 20-05) (August 2020); and FAR § 52.204–26, Covered Telecommunications Equipment or Services-Representation (October 2020).  AR 59-9740.

On August 11, 2021, CGI, Carahsoft, and Mythics were named as the recommended awardees. CGI (and its Momentum software) was rated high confidence in each of the technical factors with a final price of $156,546,158. AR 92-12262. Carahsoft, using SAP's software, was also rated high confidence in each factor with a final price of $40,243,950. AR 92-12262. Mythics, using Oracle's software, was rated high confidence for factors 1 and 2 and rated as some confidence for factors 3 and 4 with a final price of $225,840,051. AR 92-12262. Savantage was rated some confidence for each factor with a final price of [***]. AR 92-12262. Savantage had been ranked fourth out of the seven received proposals and did not receive an award. AR 93-12272.

In its proposal, Savantage had offered its software solution Altimate Enterprise Suite version 19.6 release 5.X, which included three modules: Altimate Financials, Altimate Asset Management, and [***] (which was developed by [***]). AR 86-11933, 11936; *see* Pl.'s Mot. at 8. DHS determined that the software had not and was not currently deployed at another federated agency with at least 6,500 users, AR 93-12277, the software was not fully integrated, AR 93-12280, and Altimate and [***] had only recently been implemented together, AR 93-12303 to 12305. Savantage's proposed unit prices were determined to be reasonable. AR 93-12305. Savantage received a Notice of Award Decision informing it that CGI, Carahsoft, and Mythics had been given awards on September 2, 2021. AR 93-12271.

### E. This Protest

Savantage filed this bid protest on September 27, 2021. *See* Compl., ECF No. 1. Two of the three awardees, CGI and Mythics, intervened in the case. *See* Order of September 28, 2021, ECF No. 12; Order of November 16, 2021, ECF No. 38. Savantage has moved for judgment on the administrative record, claiming that DHS failed to exclude Carahsoft and Mythics from the competition for their late submissions to amendment 5 and that DHS improperly evaluated all of the proposals in various ways, including applying unstated criteria and failing to adhere to the requirements of the solicitation. Savantage also seeks a permanent injunction. *See generally* Pl.'s Mot. In response, defendants seek judgment in their favor on the administrative record, contending that DHS acted appropriately and within its discretion when making the procurement award. *See generally* Def.'s Cross-Mot., CGI's Cross-Mot., and Mythics's Cross-Mot.

## STANDARDS FOR DECISION

The standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's consideration of a protest of the government's decisions regarding the award of a contract. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, the court may set aside a government procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004); *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014). "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing

6

court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (brackets omitted) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

The court may not "substitute its judgment for that of the agency," *Hyperion*, 115 Fed. Cl. at 550 (quoting *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (in turn quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))), but "must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" *id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)). This is so even if the clarity of the agency's decision is "less than ideal," so long as "the agency's path may reasonably be discerned." *Federal Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). "'[T]he deference afforded to an agency's decision must be even greater when a trial court is asked to review a technical evaluation' because of the highly specialized, detailed, and discretionary analyses frequently conducted by the government." *CSC Gov't Sols. LLC v. United States*, 129 Fed. Cl. 416, 434 (2016) (quoting *L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 650 (2008)) (additional citations omitted).

The court may overturn the government's procurement decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In conducting the rational-basis analysis, the court looks to "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333), and affords "contracting officers . . . discretion upon a broad range of issues," *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quoting *Impresa Construzioni*, 238 F.3d at 1332-33). Accordingly, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332-33). Protests alleging a violation of regulation or procedure "must show a clear and prejudicial violation." *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333).

## ANALYSIS

### A.  The "Late is Late" Rule

Savantage contends that the agency committed prejudicial error by failing to exclude Carahsoft's and Mythics's proposals because they were submitted late and in Mythics's case, was incomplete. Pl.'s Mot. at 16. FAR § 52.212-1(f)(2)(i) (which was incorporated into the solicitation, *see* AR 68-10015) provides that "[a]ny offer, modification, revision, or withdrawal of an offer received at the [g]overnment office designated in the solicitation after the exact time specified for receipt of offers is 'late' and will not be considered." "Courts interpreting the late is late rule have adhered to the plain text of the regulation, commenting that its requirement that offerors submit their proposals on time is a strict rule with very limited exceptions." *Geo-Seis*

*Helicopters, Inc. v. United States*, 77 Fed. Cl. 633, 640 (2007) (internal quotations and citation omitted). The rule serves to ensure equal treatment across offerors and prevents any one offeror from obtaining a competitive advantage. *See Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 173 (2005).

FAR § 52.212-1(g), however, also allows the government to "waive informalities and minor irregularities in offers received." Waiver under this regulation is discretionary. *See Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1347 (Fed. Cir. 2021). While this regulation does not define "informalities" or "irregularities," the Federal Circuit has cited to FAR § 14.405 in these types of situations, which rule defines "[a] minor informality or irregularity [as] one that is merely a matter of form and not of substance." Specifically, it is a defect that has negligible effect on "price, quantity, quality, or delivery." FAR § 14.405. The regulation cites failing to "[r]eturn the number of copies of signed bids required by the invitation" or failing to "acknowledge [the] receipt of an amendment to an invitation for bids" as examples of minor informalities. FAR § 14.405(a), (d). While Savantage argues that FAR § 52.212-1(g) should not apply because the late submissions "do not constitute 'offers received,'" Pl.'s Resp. and Reply at 10, it misconstrues the relevant submission. Mythics and Carahsoft had both submitted prior offers, which had been received. The late representations were modifications to those already existing proposals, bringing them within the confines of FAR § 52.212-1(g).

Here, it was within the contracting officer's discretion to waive the deadline for Carahsoft and Mythics as well as Mythics's certification of the validity date because these deficiencies were minor and had no effect on price, quantity, quality, or delivery. Unlike the defect in *Safeguard*, which resulted in a six-million-dollar price increase, *see* 989 F.3d at 1347-48, the submissions here were certifications regarding security systems that had no effect on price, quantity, quality, delivery or any other material aspect of the offers. While the amendment allowed offerors to amend their proposals, neither Mythics nor Carahsoft did so. *See* AR 59-9741. Mythics failed to certify its validity deadline, but this too had no material effect and was solely a matter of notification as the offer remained valid. The contracting officer reasonably determined that the certifications under amendment 5 were minor and exercised his discretion to waive the informalities. As such, the late is late rule does not apply.

Even if the late is late rule were to apply, Savantage seeks a remedy that is too extreme by contending that Carahsoft and Mythics should have been excluded entirely as late receipt of the certifications should have disqualified their initial proposals. *Geo-Seis Helicopter*, 77 Fed. Cl. at 645 n.26, is to the contrary, observing that a delinquent offeror's prior compliant proposals would not have been eliminated from consideration. Savantage has not identified any actual prejudice it suffered as a result of the late submissions, and the court's review of the record did not reveal any advantage afforded Mythics and Carahsoft by the delay. Therefore, it was reasonable for the contracting officer to determine that allowing them to continue in the competition did not prejudice the other offerors. Further, any prejudice Savantage suffered was cured when DHS took corrective action by removing the initial competitive range and engaging in two rounds of discussions with offerors. Savantage has stated that DHS must "either exclude Carashoft and Mythics or re-open discussions and, if appropriate, permit all offerors to submit

8

Final Proposal Revisions." Pl.'s Resp. and Reply at 23.[8]  The latter has already happened. While the discussions and revised final proposals may not have been allowed in order to rectify the amendment deficiencies and any resulting prejudice, they nonetheless have had that effect. Therefore, the late is late rule does not apply, it was within the contracting officer's discretion to allow the late proposals, and any prejudice Savantage or other offerors may have suffered was obviated by DHS's subsequent corrective action and discussions.

### B. The Solicitation Requirements

*1. Factor 2.*

Factor 2 required offerors to identify their proposed integrated software and to demonstrate that it met the requirements of the solicitation. AR 68-10022. Savantage argues that DHS applied unstated evaluation criteria, misunderstood the factual underpinnings of Savantage's proposal, and unequally applied the criteria to the offerors. Pl.'s Mot. at 35-49. The defendants contend that Savantage has waived this argument by not raising it in the earlier protests and otherwise that the criterion was fairly and accurately applied to the proposals. *See* Def.'s Cross-Mot. at 38-47. As an initial matter, the waiver principal established in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), does not apply here. Savantage is not challenging the definition of "integrated" that was established in the solicitation but rather it is challenging how DHS applied the term to the proposals.

On the merits, Savantage's challenge fails as DHS reasonably determined that the awardees' software was integrated while Savantage's was not. Savantage proposed its Altimate software, which consisted of Altimate Financials, Altimate Asset Management, and [***]. AR 86-11933 to 11935. Altimate is owned by Savantage, while [***] is owned by a different company. *See* Pl.'s Mot. at 8. DHS determined that Altimate and [***] were not integrated because the software consisted of "two separate products that [were] not tightly coupled instead of two modules of the same product." AR 89-12170; *see also* AR 89-12160 to 12180; 12288. Savantage argues that when determining integration, DHS improperly considered whether separate products were being offered, if separate companies were involved, if the software came on different platforms, and if the software was licensed separately, because those were unstated criteria. Pl.'s Mot. at 38-39. Specifically, Savantage argues that the solicitation defined integrated as a "[c]onnection between two or more software modules, *typically* part of the same system." AR 27-6412 (emphasis added). Savantage contends that DHS improperly concluded the Altimate software to be unintegrated for not being part of the same system because the solicitation merely stated that was a typical occurrence as opposed to a requirement. Pl.'s Mot. at 39. It similarly objects to the determination that its software was not "tightly coupled" as required by the solicitation's definition of integrated. *Id.* at 46. Defendants counter that DHS

---

[8] Savantage contends that because Mythics did not confirm its validity date, the only effective corrective action is to exclude it entirely. Savantage avers it was prejudiced because Mythics could have withdrawn its offer at any point had market conditions changed, while Savantage could not have done so because it validated its price on time. Pl.'s Resp. and Reply at 23. This fact is not prejudicial, especially where Mythics took no such advantage.

made a reasonable determination that Savantage's software was not integrated using the definitions within the solicitation. *See* Def.'s Cross-Mot. at 38-47.

An agency's procurement decisions are entitled to "highly deferential rational basis review," which requires a "reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *CHE Consulting, Inc. v. United states*, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotations omitted) (quoting *Advanced Data Concepts Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)). A procuring agency "has great discretion in determining the scope of an evaluation factor." *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009) (internal quotations and citations omitted). "[A] solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors." *Id.* DHS determined that, because Savantage's proposed software contained two separate platforms that were separately licensed from two separate companies, the software was not integrated. AR 89-12171. DHS thus thoroughly and adequately supported that determination, *see* AR 89-12160 to 12180, and the court will not substitute its own judgment for that of the agency. While Savantage argues that the solicitation provided that integration only "typically" requires one system, this argument misses the implicit—but reasonably discernible—message that a multi-system software is not typically optimal, leaving it in the sole discretion of the agency to determine whether such a system otherwise meets the integration requirement as outlined in the solicitation. It was reasonably rational for DHS to determine that a non-native component of the proposed software that was owned by a company other than Savantage was not an integrated part of Savantage's proposal or resulted in a tightly coupled system. Separately, Savantage also claims that DHS made several factual errors concerning Savantage's proposal. Pl.'s Mot. 42-45.[9] Again, the agency reasonably supported its factual determinations and concluded that Savantage's proposal did not evidence an integrated software. Therefore, the court will not disturb the agency's determination.

Savantage further argues that the factor was applied unfairly across offerors and that if Savantage's software was not integrated then the awardees' software also should not have been found to be integrated. Pl.'s Mot. at 40. To succeed on this ground, Savantage must show that "the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). Savantage contends that CGI's proposed software is not integrated because it included Momentum Financials, Momentum Procurement, and Momentum Fixed Assets as well as Sunflower Systems' Asset Management. Pl.'s Mot. at 41. DHS itself determined that Sunflower Assets was an unintegrated separate product. AR 63-9822. It also determined that the Momentum modules alone satisfied the solicitation's requirements. AR 63-9822. Further, Sunflower Assets was wholly obtained by CGI as opposed to Savantage's use of [***], which is under the control of another company. *See* CGI's Cross-Mot. at 25; Pl.'s Mot. at 8. The court will not second guess the agency's determination.

---

[9] Savantage argues that DHS inaccurately determined Altimate and [***] to be under different licenses, that the proposal made sufficiently clear that sub-ledgers were not necessary, and that Savantage's software would not require operations and maintenance to keep data synchronized. *See* Pl.'s Mot. 42-44.

Likewise, DHS equally applied the factor to Mythics and Carahsoft. While Savantage argues that the software proposed by both Mythics and Carahsoft are not integrated because they use "middleware," the agency came to the opposite conclusion. DHS determined that unlike Savantage's use of a non-native software, Mythics and Carahsoft use middleware "to obtain data from outside platforms," and the middleware was not necessary to meet the solicitation requirements. AR 73-10155; Def.'s Cross-Mot. at 46. Further, DHS determined that the middleware of both proposed entities' software are the middleware of the respective systems (Oracle and SAP) and thus are native to the software. AR 84-11604; 73-10155. As such, it is evident that the proposals are not "substantively indistinguishable," and Savantage has not met its burden of showing disparate treatment under Factor 2.[10]

   2.  *Factors 1 and 4.*

Factor 1 of the solicitation required offerors to demonstrate that the proposed software had been implemented with a federated agency with at least 6,500 users, and factor 4 required past performance references. AR 68-10021, 10024. Savantage contends that these criteria were unequally applied across the offerors. Savantage conceded in *Savantage VII* that it could not meet the prior-implementation requirement. 150 Fed. Cl. at 328. It cannot now argue the opposite.

As to the awardees, Savantage argues the factors were improperly applied. Savantage contends that because the awardees' software—in its view—were not integrated, the software also cannot satisfy the factor 1 and 4 requirements of having been previously implemented. Pl.'s Mot. at 49. DHS determined that the awardees' respective software are integrated, so the predicate for this argument fails. Savantage continues by arguing that the awardees failed to show that the software they are currently offering were previously implemented at other agencies. *Id.* at 50-51. As to Carahsoft, Savantage argues that an older version of the HANA program (as opposed to the offered program of S/4 HANA) was implemented at prior agencies. *Id.* The government argues that SAP S/4 HANA was first released in 2015, and that nothing in the record suggests that this was not the software implemented at the other agencies. Def.'s Cross-Mot. at 50. "The general rule [is] that an agency may rely upon an offeror's certification of compliance with a solicitation's technical requirements." *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1315 (Fed. Cir. 2016). Where there is nothing in the record to indicate the contrary, it was reasonable for DHS to determine that the representations made by Carahsoft applied to the software it was offering. As to Mythics, DHS initially agreed that it was unclear whether its software had been implemented previously. AR 89-12087 to 12088. During discussions, Mythics clarified the issue, and DHS determined that the software had been

---

[10] In a footnote in its motion, Savantage also contends that DHS engaged in disparate treatment under Factor 3. Pl.'s Mot. at 36 n.15. However, this argument was not further addressed in the motion or in plaintiff's other brief. The argument thus fails for lack of explication.

11

sufficiently implemented at qualifying agencies. Def.'s Cross-Mot. at 51.[11]  The record supports DHS's findings.  *See* AR 89-12087 to 12088.

   3. *Price Reasonableness.*

Factor 6 of the solicitation stated that the offeror's proposed price and the proposed prices contained in the pricing structure would be evaluated for price reasonableness.  AR 68-10029. Offerors were required to provide the commercial rate of their offering, the discounted rate they were offering the government, and the total price of their offering.  AR 68-10027.  The procurement was to be conducted under FAR Part 12 "while using some procedures under FAR Part 15."  AR 32-6675.[12]  The DHS Business Evaluation team compared the discounted prices with the commercial rates and determined the prices of awardees and Savantage to be reasonable.  AR 88-12020 to 12034.  The determination was reviewed and confirmed by the DHS Trade-Off Chair.  AR 91-12248 to 12249.  Savantage argues that this method lacked narrative analysis and failed adequately to address the differences in pricing across the offerors. Pl.'s Resp. and Reply at 27-29.[13]

 "Price reasonableness asks if a proposed price is too high." *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1305 (Fed. Cir. 2021) (quotation marks omitted).  The choice of what "price-analysis technique" is left to "a contracting officer's reasonable judgment in the context of an individual procurement."  *Id.* at 1310.  "[A]gency action evincing rational reasoning" should be sustained.  *Id.* at 1315 (quoting *Advanced Data Concepts,* 216 F.3d at 1058).  The agency need not provide an "explicit explanation" as to its reasoning so long as its "decisional path is reasonably discernible."  *Id.* (quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998)).  FAR § 15.404-1 "provides guidance in a way that nonetheless permits the agency broad discretion."  *Id.* at 1313 (internal quotations and citation omitted).

The method used by DHS to determine price reasonableness was itself reasonable.  The DHS Business Evaluation Team compiled a chart of the offerors' commercial list prices, the final scenario prices, and calculated the discount received.  AR 88-12043.  The chart illustrates "without words that the offerors' prices [were] lower than what the offerors charge private consumers," Def.'s Reply at 10 (emphasis omitted), and as such illustrates DHS's decisional

---

[11] In its response and reply, Savantage argues CGI was also improperly rated under factors 1 and 4.  It argues that because CGI's software is not integrated, it cannot prove past implementation of the software elsewhere.  Having rejected the argument that CGI's software is not integrated, the court will not disturb DHS's determination as to CGI and factors 1 and 4.

[12] FAR Part 12 requires that an agecy "establish price reasonableness in accordance with 13.106-3, 14.408-2, or subpart 15.4, as applicable."  FAR § 12.209.  Only FAR subpart 15.4 was applicable to the procurement.  *See* Pl.'s Mot. at 24 n.7.

[13] Savantage argued in its motion that the price reasonableness determination was arbitrary and capricious because it failed to use the competitive price-list comparison technique and failed to compare all of CGI's unit prices.  Pl.'s Mot. at 25, 28.  Savantage has withdrawn these arguments, Pl.'s Resp. and Reply at 25 n.9, 10, and the court will not consider them.

path.  Unlike the agency in *DynCorp*, which conducted an analysis of the lowest-priced offeror only, *see DynCorp Int'l LLC v. United States*, 148 Fed. Cl. 568, 581 (2020), *aff'd*, *DynCorp*, 10 F.4th at 1317, DHS evaluated each offeror's price against the price provided to private consumers.  *See* AR 88-12043.[14]

DHS also compared the offerors' pricing against one another.  While the government contends that this analysis was unnecessary in light of the consumer comparison, it also argues that DHS properly conducted this analysis and supported it with a narrative.  Def.'s Reply at 11-12.  DHS explained that it found the significant difference in price between Carahsoft and the other offerors to be a result of Carahsoft's offering subscription licenses while the others proposed perpetual licenses along with a difference in the level of discount offered.  AR 88-12040.  While Savantage argues that this analysis did not determine price reasonableness, it is implicit and readily discernible that, by identifying differences in the price approach between Carahsoft and the other offerors, DHS was determining the prices to be reasonable despite the significantly different approaches involved.  DHS satisfied the price reasonableness requirement by comparing offerors' prices with the prices provided to consumers, and any other charts or analyses were extraneous.

*4. Best Value.*

The solicitation required that an award was to be made to an offeror "whose proposal [was] determined to represent the best value, price and non-price factors considered."  AR 68-10028.  Best value was defined as "the expected outcome of an acquisition that in the [g]overnment's estimation provide[d] the greatest overall benefit in response to the requirement."  AR 68-10028.  The soliciation also prohibited DHS from making an award "at a significantly higher overall cost to the [g]overnment to achieve only slightly superior technical capability."  AR 68-10028.  Savantage argues that DHS cannot justify making awards to CGI and Mythics when their final prices were significantly higher than Carahsoft's final price.  Pl.'s Mot. at 53.  Savantage argues that an award should not have been made to CGI and Mythics on those grounds and that Carahsoft should have been excluded for its late certification, leaving only Savantage to receive an award.  *Id.* at 53-54.

The solicitation contemplated multiple awards, *see* AR 24-5390, meaning that DHS was not required to accept only the lowest offer, so long as significant technical advantages were involved.  Further, the solicitation contemplated that obtaining "the greatest overall benefit" might require awarding to a higher-priced offeror.  AR 68-10028.  DHS determined that CGI and Mythics offered such advantages.  *See* AR 91-12248 ("CGI's higher evaluated premium price

---

[14] A government chart also compared the independent government cost estimates of the offerors.  *See* AR 88-12034.  Savantage challenges this approach on the ground that it lacked a narrative analysis.  The government concedes that there was not an accompanying narrative and that some of the offerors' prices exceeded the independent government cost estimate.  Def.'s Reply at 10 n.2.  The government argues that Savantage was not prejudiced because DHS was not required to conduct multiple analyses.  *Id.*  The commercial comparison reasonably satisfied the price reasonableness analysis requirement, so the lack of narrative supporting this second chart is irrelevant.

and higher rated proposal represents the best value to the [g]overnment as compared to Savantage."); 12249 ("The additional benefits of the Mythics proposal in the most important areas of experience and software functionality is considered to be more advantageous to the [g]overnment than Savantage's lower evaluated price."). DHS further established that the differences in price across the three awardees could be explained by the difference in licensing approaches. AR 88-12034; 12040; 27-6542. Ultimately, "[p]rocurement officials have substantial discretion to determine which proposal represents the best value." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). Where DHS reasonably and rationally justified its best value determination, the court will not second guess the agency's judgment.

The court therefore rejects Savantage's challenge that DHS conducted the procurement in an arbitrary, capricious, or prejudicial manner.

## CONCLUSION

For the foregoing reasons, Savantage's motion for judgment on the administrative record is DENIED, and defendant's and defendant-intervenors' motions for judgment on the administrative record are GRANTED. Savantage's motion for a permanent injunction is DENIED AS MOOT.

The Clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge